<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

RONALD JAMES BARBER,      :
                      :   Civil Action No. 10-5286 (PGS)
          Plaintiff,    :
                      :
                      :
          v.             :   **OPINION**
                      :
KENNETH SHARP, et al.,      :
                      :
         Defendants.   :

**APPEARANCES:**

      RONALD JAMES BARBER, Plaintiff <u>pro</u> <u>se</u>
      #000104
      East Jersey State Prison, Special Treatment Unit
      CN 905, 8 Production Way
      Avenel, New Jersey 07001

**SHERIDAN**, District Judge

     Plaintiff, Ronald James Barber, an involuntarily committed person pursuant to the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.24, <u>et</u> <u>seq.</u>, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

     At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether the action should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks

monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that this action should be dismissed for failure to state a claim.

## I.  <u>BACKGROUND</u>

Plaintiff, Ronald James Barber ("Barber"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Kenneth Sharpe, Assistant Attorney General for the State of New Jersey; Debbie Hasting, Superintendent at the Adult Diagnostic and Treatment Center ("ADTC") in Avenel, New Jersey; John Main, New Jersey Department of Human Services ("NJDHS") Administrator at the Ann Klein Forensic Center in Trenton, New Jersey; Dr. Merril Main, NJDHS Administrator at the ADTC; Shantay Brame Adams, Assistant Clinical Director at the STU in Avenel, New Jersey; Jennifer Velez, NJDHS Commissioner; and Steve Johnson, Assistant Superintendent at the East Jersey State Prison, Special Treatment Unit ("EJSP-STU").  (Complaint, Caption and ¶¶ 4b-4h).  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

The Court notes that this is the second action filed by Barber with regard to his civil confinement at the STU in EJSP. His first action, <u>Barber v. Christie, et al.</u>, Civil No. 10-1888 (SRC), was dismissed without prejudice by Opinion and Order

issued by the Honorable Stanley R. Chesler on or about July 7, 2010. Barber filed this instant Complaint on or about October 13, 2010.[1]

In this second action, Barber continues to complain about his confinement at the EJSP STU, and what he alleges are unconstitutional restrictions and conditions placed on him as a civilly committed person. He generally complains that he will be subjected to 23-hour lock down at the EJSP-STU, that there will be no treatment provided at the "prison" facility, and that plaintiff will be subject to prison rules and polices. (Compl., ¶¶ 4(b)-(h), 6).

As in his first action, Barber continues to assert the same claims. For instance, Barber alleges that, on March 17, 2010, a community meeting was held at the Northern Regional Unit ("NRU") in Kearny, New Jersey to discuss a proposed transfer of the NRU residents to the EJSP STU in Rahway, New Jersey. The meeting was conducted by defendant Steven Johnson. Johnson told the residents that they would be housed in the administrative segregation unit at the EJSP. He also told the residents that they would have to take their mattresses with them. (Compl., ¶ 6 Statement of Claims).

---

[1] The Complaint is dated and signed by plaintiff on September 25, 2010; however, it was not received by the Clerk of the Court until September 29, 2010 as noted on the docket report.

On March 25, 2010, a memorandum was issued informing the residents that they can not order personal belongings, such as food and clothing, or pay bills because of the pending transfer to EJSP.  There also was a deadline of April 9, 2010, for receiving general packages, and a deadline of April 25, 2010 for receiving food packages at the Kearny facility.  (Id.).

In this second Complaint, Barber adds that, on May 14, 2010, he was threatened with MAP status, i.e., Modified Activities Program, if he continued to file grievances or complain about the fact that his mail was being sent to a different address than where plaintiff is confined.  (Compl., ¶ 6).

Shortly after submitting this second Complaint, Barber filed an application for a preliminary injunction.  (Docket entry no. 2).  He asks the Court to enjoin defendants from any retaliatory actions against plaintiff, such as placing plaintiff on MAP status or confiscating his paper work.  Barber generally alleges that he has been banned from the prison law library, placed under prison policy and guidelines and threatened with MAP status. (Docket entry no. 2).

Barber seeks monetary compensation for mental anguish and stress that he has suffered upon being placed in a prison facility, and he asks for proper treatment at a federally funded facility.  (Compl., ¶ 7).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

A district court is required to review a complaint in a civil action where the litigant is proceeding in forma pauperis. Specifically, the court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief, pursuant to 28 U.S.C. § 1915(e)(2)(B).  Accordingly, because Barber is proceeding in forma pauperis in this matter, this action is subject to sua sponte screening for dismissal under 28 U.S.C. § 1915(e)(2)(B).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). See also Erickson, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009). The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights. Id. The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

6

Fed.R.Civ.P. 8(a)(2).[2]  Citing its recent opinion in Bell

Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the

proposition that "[a] pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do,'" Iqbal, 129 S.Ct. at 1949 (quoting

Twombly, 550 U.S. at 555), the Supreme Court identified two

working principles underlying the failure to state a claim

standard:

> First, the tenet that a court must accept as true all of the
> allegations contained in a complaint is inapplicable to
> legal conclusions.  Threadbare recitals of the elements of a
> cause of action, supported by mere conclusory statements, do
> not suffice ... .  Rule 8 ... does not unlock the doors of
> discovery for a plaintiff armed with nothing more than
> conclusions.  Second, only a complaint that states a
> plausible claim for relief survives a motion to dismiss.
> Determining whether a complaint states a plausible claim for
> relief will ... be a context-specific task that requires the
> reviewing court to draw on its judicial experience and
> common sense.  But where the well-pleaded facts do not
> permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not
> "show[n]"-"that the pleader is entitled to relief."  Fed.
> Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin
> by identifying pleadings that, because they are no more than
> conclusions, are not entitled to the assumption of truth.
> While legal conclusions can provide the framework of a
> complaint, they must be supported by factual allegations.
> When there are well-pleaded factual allegations, a court
> should assume their veracity and then determine whether they
> plausibly give rise to an entitlement to relief.

---

[2]  Rule 8(d)(1) provides that "[e]ach allegation must be
simple, concise, and direct.  No technical form is required."
Fed.R.Civ.P. 8(d).

<u>Iqbal</u>, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id</u>. at 1948.  The Supreme Court's ruling in <u>Iqbal</u> emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible.  <u>Id</u>. at 1949-50; <u>see also</u> <u>Twombly</u>, 505 U.S. at 555, & n.3; <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210(3d Cir. 2009).

Consequently, the Third Circuit observed that <u>Iqbal</u> provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957),[3] that applied to federal complaints before <u>Twombly</u>.  <u>Fowler</u>, 578 F.3d at 210.  The Third Circuit now requires that a district court must conduct the two-part analysis set forth in <u>Iqbal</u> when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [<u>Iqbal</u>, 129 S.Ct. at 1949-50<u>]</u>.

---

[3]  In <u>Conley</u>, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  <u>Id</u>., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

## III.   SECTION 1983 ACTIONS

Barber brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### IV.   THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 et seq., provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections ("DOC") operates the facilities designated for SVPs, N.J.S.A. 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  N.J.S.A. 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with of the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators."  N.J.S.A. 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs.  N.J.S.A. 30:4-27.25.  The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed.  Id.  The SVPA defines a SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

N.J.S.A. 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual review hearings.  N.J.S.A. 30:4-27.35.  A SVP may be released from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

## V.  ANALYSIS

### A.  Transfer to Prison Facility Claim

Barber again seems to reiterate his primary complaint that he has been transferred to a prison facility, as a civilly committed person under the SVPA, and that such placement is unconstitutional where he is subject to the prison policies in place for the orderly operation and security of a prison facility.  Barber raised this claim in his first action, Civil No. 10-1888 (SRC).  The Court dismissed this claim, with

prejudice, in the Opinion and Order issued on or about July 7, 2010, based on the Supreme Court's ruling in Kansas v. Hendricks, 521 U.S. 346 (1997).

In Kansas v. Hendricks, the Supreme Court examined the conditions of confinement provided by Kansas' Sexually Violent Predator Act. The Act called for the confinement of sexually violent predators in a secure facility because they were dangerous to the community. Id., 521 U.S. at 363-64. Pertinent here, the Supreme Court was aware that the sexually violent predators in Kansas were to be held in a segregated unit within the prison system. However, the Court noted that the conditions within the unit were essentially the same as conditions for other involuntarily committed persons in mental hospitals. Moreover, confinement under the Act was not necessarily indefinite in duration, and the Act provided for treatment. Id., 521 U.S. at 363, 364, 365-368. Thus, the Supreme Court held that involuntary confinement under Kansas' SVPA was not unconstitutional so long as such civilly-confined persons are segregated from the general prison population and afforded the same status as others who have been civilly committed. Id., 521 U.S. at 368-69. See also Seling v. Young, 531 U.S. 250, 261062 (2001)(holding same with respect to the State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the Kansas and Washington SVP statutes that were examined and upheld as constitutional by the Supreme Court in Hendricks and Seling,

respectively.[4]  See Bagarozy v. Goodwin, Civil Action No. 08-468
(SRC), 2008 WL 4416455, *7-8 (D.N.J. Sept. 23, 2008); In re
Commitment of W.Z., 173 N.J. 109, 801 A.2d 205, 211 (2002).
Therefore, this Court finds that Barber's placement and
confinement in a Special Treatment Unit for SVP residents that is
a segregated unit in the East Jersey State Prison, does not, in
and of itself, violate the U.S. Constitution's Due Process Clause
or the Eighth Amendment's prohibition against cruel and unusual
punishment.  Accordingly, Barber's claim that his continued
confinement in a segregated unit within a prison facility is
unconstitutional must be dismissed for failure to state a
cognizable claim of a constitutional deprivation.

B.  Conditions of Confinement Claim

    Although plaintiff's placement in a segregated unit within a
prison facility is not, in and of itself, a constitutional
violation, Barber makes additional allegations concerning the
conditions of confinement at the EJSP facility.  For instance, he
complains that he is housed in a prison facility subject to
restrictions.  See Youngberg v. Romeo, 457 U.S. 307, 321-22
(1982)("Persons who have been involuntarily committed are

_____

    [4]  Recently, the Supreme Court held constitutional under the
Necessary and Proper Clause, a federal statute that allowed a
district court to order the civil commitment of a sexually
dangerous federal prisoner beyond the date the prisoner would
otherwise be released.  United States v. Comstock, No. 08-1224,
__ U.S. __, 130 S.Ct. 1949 (May 17, 2010).  Although these
civilly committed persons remained confined at a federal prison,
namely, FCI Butner, the Court did not address their place of
civil confinement as being unconstitutional.

                               13

entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly committed persons not be subjected to conditions that amount to punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[5] within the bounds of professional discretion, Youngberg, 457 U.S. at 321-22.  Specifically, in Youngberg, the Supreme Court held that civilly committed persons do have constitutionally protected interests, but that these rights must be balanced against the reasons put forth by the State for restricting their liberties. Id. at 307.  The Constitution is not concerned with de minimis restrictions on patients' liberties.  Id. at 320.  Moreover, "due process requires that the conditions and duration of confinement [for civilly confined persons] bear some reasonable relation to the purpose for which persons are committed."  Seling, 531 U.S. at 265.  While the nature of an SVP's confinement may factor in this balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs. See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)(applying the Fourteenth Amendment's "objective

---

[5]   In Bell v. Wolfish, the Supreme Court held that whether a condition of confinement of pretrial detainees violated their constitutional rights turns on whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose.  441 U.S. 520, 535-39, (1979).

reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Barber's main allegation with respect to the conditions of his confinement relates to his contention that he is now housed in a prison facility and has been treated like a prisoner and subjected to prison rules.  For instance, he complains that mail is sent to a different location, and any resident who complains will be placed in MAP status.  Barber also complains that he is housed in the EJSP STU, which used to be the Administrative Segregation Unit that had a 23-hour lock down policy before the arrival of the SVP residents.  He does not expressly allege that he has been confined in his room for 23 hours a day. Accordingly, this claim will be dismissed for failure to state a claim.

The Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme. See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007)(applying Sandin v. Conner, 515 U.S. 472 (1995),[6] to segregated confinement of civilly committed SVPs).  See also Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002)(likewise extending Sandin to civil commitment settings).  Thus, Barber's

---

[6]  In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

15

general allegation that disruptive and agitative residents may be placed in MAP status, and that general movement is monitored and restricted, without more, fails to articulate a cognizable claim of constitutional magnitude, in light of <u>Deavers</u>.  Barber fails to allege any facts to show that MAP restrictions and movements within the EJSP facility are unduly extreme and unrelated to the purposes for which such restrictions are imposed.

Therefore, with respect to his conditions claim as alleged, this Court finds that Barber has failed to state a cognizable claim.  Given that this is plaintiff's second attempt at raising this claim, and he has failed to allege new or additional facts to sustain a conditions claim, and indeed, has relied on the same factual allegations as asserted previously, which were dismissed without prejudice in Civil No. 10-1888 (SRC), the Court finds no reason or argument by plaintiff that would permit Barber yet another bite at the apple.  Accordingly, the Court is constrained to dismiss this claim with prejudice for failure to state a cognizable claim under § 1983.

C.  <u>Interference with the Mail Claim</u>

Additionally, Barber complains about the mail restrictions. This Court finds that these mail accommodations or restrictions are not extreme conditions of plaintiff's confinement as a civilly committed person, and thus, do not violate due process.

Specifically, Barber seems to complain that his mail must be sent to Avenel rather than directly to the EJSP unit where he is

16

confined.  The Court perceives this claim as asserting a violation of plaintiff's First Amendment rights.  However, Barber does not indicate that he has not received mail or packages, or that his mail has been opened outside his presence.  Rather, he merely alleges that he believes his mail is being monitored without any factual support for the bald claim.

As a general rule, inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments.  Jones v. Brown, 461 F.3d 353, 358 (3d Cir. 2006), cert. denied, 549 U.S. 1286 (2007).[7]  However, an inmate's constitutional right to send and receive mail may be restricted for legitimate penological interests.  See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).  In Turner, the Supreme Court of the United States found that a prison

---

[7]  In Jones v. Brown, the United States Court of Appeals for the Third Circuit held that the legal mail policy of state prison in opening legal mail outside the presence of the inmate violated the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff. 461 F.3d at 358.  The Third Circuit also has held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.  Such a practice chills protected expression and may inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Bieregu v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the Turner analysis), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). Thus, the assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen may state a First Amendment claim. See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).

regulation infringing on an inmate's constitutional rights is valid so long as it is reasonably related to a legitimate penological interest. Id. at 89.  The Court established a balancing test pursuant to which courts analyze prohibitions on prisoners' exercise of their constitutional rights by considering the following four factors: (1) whether prohibiting an inmate from exercising a constitutional right is rationally related to a legitimate governmental interest; (2) whether there are alternative means of exercising that right; (3) what effect accommodation of the interest would have on guards, other inmates, and the allocation of prison resources; and (4) whether there are ready alternatives available that continue to serve the prison's interest without impinging constitutional rights. Turner, 482 U.S. at 89-91.  The Court also recognized that deference should be given to the decisions of prison administrators, especially when those decisions deal with issues of prison safety and security.  Id.

The United States Court of Appeals for the Third Circuit has applied Turner in analyzing constitutional claims by civilly committed SVPs.  See Rivera v. Rogers, 224 Fed. Appx. 148, 2007 WL 934413 (3d Cir. March 29, 2007)(applying Turner in analyzing claims of SVPs that opening of their packages violated their First Amendment rights).  Other courts likewise have applied Turner when analyzing claims brought by civilly committed SVPs

18

alleging First Amendment violations.[8]  See Willis v. Smith, 2005
WL 550528 (N.D. Iowa Feb. 28, 2005)(noting that status of SVPs
was substantially similar to that of prisoners and applying
Turner to SVP claims concerning mail handling procedures); Ivey
v. Mooney, 2008 WL 4527792, at *4 n. 7 (D. Minn. Sept. 30,
2008)(applying Turner, but noting that a civil confinement is
significantly different from a criminal confinement); Francis v.
Watson, 2006 WL 2716452, at *3 (D.S.C. Sept. 22, 2006)(citing
cases that have applied Turner in cases involving civilly
confined persons); Marsh v. Liberty Behavioral Health Care, Inc.,
2008 WL 821623, at *5 (M.D. Fla. Mar. 27, 2008), aff'd 330 Fed.
Appx. 179 (11th Cir. 2009); Beaulieu v. Ludeman, 2008 WL 2498241,
at *20 (D. Minn. June 18, 2008).

     In Rivera, the Third Circuit affirmed the district court's
ruling that a facility housing civilly committed SVPs has a
legitimate interest in both the safety of its facility and the
rehabilitation of its patients.  Rivera, 224 Fed. Appx. at 151
(citing Waterman v. Farmer, 183 F.3d 208, 215 (3d Cir.
1999)("[I]t is beyond dispute that New Jersey has a legitimate
penological interest in rehabilitating its most dangerous and

_____

     [8]  Essentially, the First Amendment analysis under Turner
mirrors the due process analysis under Youngberg; in both
instances, courts must balance the constitutional interests of
confined persons against the legitimate interests of the state-
run institution in which they reside.  See Beaulieu v. Ludeman,
2008 WL 2498241, at *20 n. 15 (finding Turner to be consistent
with Youngberg because "it will not allow a Program detainee's
right to be restricted unless there is a valid institutional
reason for doing so").

compulsive sex offenders.")).  Specifically, the court upheld as
constitutional the STU's policy that allows staff to open
packages not marked as "legal mail" to assure that the packages
do not contain contraband (i.e., items either harmful to staff
and residents, or detrimental to rehabilitation).  The court
found that plaintiff was free to send and receive mail so long as
the content of his mail was not sexually explicit.  Moreover, the
Third Circuit found no error in the district court's conclusion
that there were no ready alternatives to mail security and that
the STU's policy appeared to be the only viable alternative, thus
supporting the reasonableness of the mail policy.  Rivera, 224
Fed. Appx. at 151.

Here, this Court likewise finds that it is beyond dispute
that the staff at EJSP, where plaintiff and other SVP residents
are newly housed, has a legitimate interest in both the safety of
its facility and rehabilitating its patients.  As noted above,
these civilly committed persons are convicted sexual predators,
which makes safety at EJSP a very important concern.  The staff
clearly must determine if any items coming through the mail pose
a threat to the safety of the staff or the other residents.  They
also must decide if any of the materials passing through the mail
could be detrimental to a resident's therapy.  Consequently, as
set forth by the Supreme Court and the Third Circuit, the Court
must defer to the prison officials when it comes to issues of
managing a safe and operational prison facility.  In this case,

delivery of letters and packages at the Avenel facility located close by, where the staff is trained with respect to SVP issues unlike the general NJDOC staff at EJSP, assures that harmful materials are not being passed through the mail, but also allows for specialized treatment regarding SVP residents.  This new policy, which appears to be preliminarily instituted because of the recent transfer of the SVP residents to EJSP, clearly bears a rational relationship to both interests discussed above.

Moreover, in his interference with the mail claim, Barber fails to allege even a single incident of interference with his mail.  A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.  Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).  Thus, the only continuing complaint seems to be that his mail is sent to another facility instead of EJSP where he now resides.  Barber does not articulate a claim that prison officials are intentionally delaying or opening his mail.  Therefore, the Court will dismiss this claim with prejudice.

D.   Access to Law Library Claim

This Court next considers plaintiff's allegations that he has been denied access to the courts (via denial of access to the law library) in violation of his First and Fourteenth Amendment rights.  Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of

access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[9] The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement. <u>Bounds v. Smith</u>, 430 U.S. 817, 822 (1977). In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." <u>Id</u>. at 825. "'[T]he touchstone ... is meaningful access to the courts.'" <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting* <u>Bounds</u>, 430 U.S. at 823)(internal quotation omitted).

In <u>Bounds</u>, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of

---

[9]   The right of access to the courts is an aspect of the First Amendment right to petition. <u>McDonald v. Smith</u>, 472 U.S. 479, 482 (1985); <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981). The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989). <u>See also</u>, <u>Hudson v. Palmer</u>, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); <u>Bounds v. Smith</u>, 430 U.S. 817 (1977); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 576 (1974). The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

meaningful legal papers by providing prisoners with adequate law
libraries or adequate assistance from persons trained in the
law."  The right of access to the courts is not, however,
unlimited.  "The tools [that Bounds] requires to be provided are
those that the inmates need in order to attack their sentences,
directly or collaterally, and in order to challenge the
conditions of their confinement.  Impairment of any other
litigating capacity is simply one of the incidental (and
perfectly constitutional) consequences of conviction and
incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996)
(emphasis in original).  Similarly, a pretrial detainee has a
right of access to the courts with respect to legal assistance
and participation in one's own defense against pending criminal
charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th
Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31,
2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th
Cir. 2000) (pretrial detainee who rejects an offer of court-
appointed counsel in satisfaction of the Sixth Amendment right to
counsel has no alternative right to access to a law library);
Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998)
(same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385,
**4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of
access must show that prison officials caused him past or
imminent "actual injury" by hindering his efforts to pursue such

23

a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55
(1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997).
"He might show, for example, that a complaint he prepared was
dismissed for failure to satisfy some technical requirement
which, because of deficiencies in the prison's legal assistance
facilities, he could not have known.  Or that he had suffered
arguably actionable harm that he wished to bring before the
courts, but was so stymied by inadequacies of the law library
that he was unable to file even a complaint." Lewis, 518 U.S. at
351.

        Here, Barber fails to allege any actual injury as a result
of the alleged denial of access to the law library.  He does not
allege that he was unable to file this or any other complaint in
the courts, and in fact, he has not been limited in filing the
instant action, or his several other recent Complaints in this
federal court.  Consequently, the allegations in the Complaint
are too conclusory to show a denial of court access sufficient to
rise to the level of a constitutional deprivation under the Iqbal
pleading standard.  "[T]he pleading standard Rule 8 announces
does not require detailed factual allegations, but it demands
more than an unadorned, the-defendant-unlawfully-harmed-me
accusation .... Nor does a complaint suffice if it tenders naked
assertions devoid of further factual enhancement." Iqbal, 129
S.Ct. at 1949 (citations and internal quotation marks omitted).

Furthermore, Barber does not articulate how the alleged denial of access to the law library has hindered his efforts to either pursue this claim or defend himself in any pending state proceedings.  Therefore, his claim alleging denial of access to the courts based on an alleged failure to provide access to the law library will be dismissed with prejudice for failure to state a claim of any constitutional dimension.

E.   <u>Denial of Treatment Claim</u>

Barber also continues to assert that therapy/treatment will be denied because of the prison setting and control by NJDOC officials over movements and conduct of the residents in the EJSP-STU.  This claim suggests that Barber is denied the right to adequate treatment and reasonable care applicable to civilly committed SVPs, in violation of the Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  This due process guarantee has been interpreted to have both procedural and substantive components, the latter which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed."  <u>Palko v. Conn.</u>, 302 U.S. 319, 325 (1937).  These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause, such as the right

to marry.  Washington v. Glucksberg, 521 U.S. 702, 720 (1997).
Substantive due process also protects against government conduct
that is so egregious that it "shocks the conscience," even where
the conduct does not implicate any specific fundamental right.
See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny
and will be upheld if they are "narrowly tailored to serve a
compelling state interest." Reno v. Flores, 507 U.S. 292, 302
(1993).  However, regulations not implicating fundamental rights
(in other words, those claims attacking particularly egregious or
arbitrary governmental actions) are analyzed under the
deferential standard referred to as the rational basis review,
and will generally succeed only if the government action shocks
the conscience.  See Glucksberg, 521 U.S. at 728.

With respect to Barber's claim, it appears that he is
asserting that he has a fundamental right to adequate treatment
as a civilly committed sex offender, and that as a result of the
prison setting he is not being afforded adequate treatment.  The
Supreme Court established that there exists a constitutionally
protected right of mentally retarded persons confined at a state
institution to minimally adequate treatment.  Specifically, the
Supreme Court held that there is a constitutional right of
mentally disabled persons confined at a state institution to
"minimally adequate habilitation", self-care treatment or
training to the extent necessary to protect their recognized

fundamental rights to safety and freedom from physical restraints.  Youngberg, 457 U.S. at 316, 319 and 322.

The Supreme Court further held that, where a fundamental right is at issue, a district court must balance "the liberty of the individual and the demands of an organized society" to determine whether such right has been violated.  Youngberg, 457 U.S. at 320.  Although restrictions burdening a fundamental right generally receive strict scrutiny, in Youngberg, the Supreme Court found that this sort of rigorous analysis would unduly burden the ability of states, specifically their professional employees, to administer mental health institutions.  Id. at 322.  Consequently, the Court concluded that "the Constitution only requires that the courts make certain that professional judgment was in fact exercised," because "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made."  Id. at 321 (internal quotation and citation omitted).  Thus, a decision, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment."  Id. at 323.

In Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that New Jersey's unique former statutory scheme for sex offenders that

27

predicated the term of sentence on a prisoner's response to
treatment and created a right to treatment created a fundamental
and cognizable liberty interest in treatment, for purposes of
both procedural and substantive due process analyses.  288 F.3d
at 545.  Leamer was not a civilly committed sex offender like
plaintiff here.  Rather, Leamer was a convicted sex offender
whose confinement and treatment were inextricably linked pursuant
to statute.  The sentencing court had classified Leamer as having
a "mental aberration" and in need of "specialized treatment,"
which automatically subjected Leamer to the maximum incarceration
permitted by law unless he is cured prior to that point.  Leamer
could not reduce his sentence through good behavior credits,
parole policies or other credits.  Instead, he could only shorten
his incarceration through successful therapy, which was an
"inherent and integral element" of the statutory scheme.
Consequently, the Third Circuit found that deprivation of
treatment would be a grievous loss not emanating from the
sentence.  Leamer, 288 F.3d at 544.

Apart from that recognized in Youngberg to prevent the
violation of recognized fundamental rights to safety and freedom
from physical restraints, this Court finds the Third Circuit's
holding in Leamer to clearly extend to an involuntarily committed
sex offender under New Jersey's SVPA.  Like Leamer, the length of
Barber's confinement under the SVPA is predicated on his response
to treatment.  Indeed, the provisions of the SVPA explicitly

28

recognize New Jersey's obligation to provide treatment to SVPs
for their eventual release based on successful therapy.  <u>See</u>
<u>N.J.S.A</u>. 30:4-27.32(a)("If the court finds by clear and
convincing evidence that the person needs continued involuntary
commitment as a sexually violent predator, it shall issue an
order authorizing the involuntary commitment of the person to a
facility designated for the custody, care and ***treatment*** of
sexually violent predators")(emphasis added); <u>N.J.S.A</u>. 30:4-
34(b)("The Division of Mental Health Services in the Department
of Human Services shall provide or arrange for treatment for a
person committed pursuant to this act.  Such treatment shall be
appropriately tailored to address the specific needs of sexually
violent predators."); <u>N.J.S.A.</u> 30:4-27.36(a)(At any time during
the involuntary commitment of a person under this act, if the
person's treatment team determines that the person's mental
condition has so changed that the person is not likely to engage
in acts of sexual violence if released, the treatment team shall
recommend that the Department of Human Services authorize the
person to petition the court for discharge from involuntary
commitment status"); <u>see also</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346,
367 (1997)(concluding from similarly-worded provisions of Kansas
SVP Act that "the State has a statutory obligation to provide
'care and treatment for [persons adjudged sexually dangerous]
designed to effect recovery ....")(alterations in
original)(internal citations omitted).

Therefore, based on Youngberg and Leamer, this Court
concludes that Barber may have a fundamental liberty interest in
treatment, but has not stated a cognizable claim for purposes of
both procedural and substantive due process analyses.  See Bailey
v. Gardebring, 940 F.2d 1150, 1154 (8th Cir. 1991), cert. denied,
503 U.S. 952 (1992)(where the Eighth Circuit noted that Youngberg
did not establish a right for the civilly committed to treatment
per se; the Supreme Court only "held that the Constitution
required only such 'minimally adequate training ... as may be
reasonable in light of [the] liberty interest[ ] in safety and
freedom from unreasonable restraints.'")(quoting Youngberg, 457
U.S. at 322).  In Bailey, the Eighth Circuit concluded that
plaintiff had no right to "psychiatric treatment to overcome a
'sexual offender condition'" because he "was neither in danger
during his civil commitment nor was he subject to any restraints
beyond the ordinary incidents of any involuntary confinement."
Id. at 1153, 1154.  Citing Bailey, district courts in the Eighth
Circuit have since concluded that civilly committed sexual
predators have no substantive due process right to mental health
treatment, adequate or otherwise.  See Semler v. Ludeman, 2010 WL
145275, at *26 (D. Minn. Jan. 8, 2010)("Because this Court has
not recognized a constitutional right to effective 'treatment' in
the context of civilly committed sex offenders, Plaintiffs
[alleging substantive due process violations through ineffective
treatment] have failed to allege a due process claim

30

....")(citing Nicolaison v. Ludeman, 2008 WL 508549, at *8 (D. Minn. Feb. 11, 2008)(finding, in ultimately concluding that involuntarily committed sex offender's right to treatment is not "clearly established" for purposes of 28 U.S.C. § 2254(d)(1), that Youngberg "only recognized a right to 'minimally adequate' treatment that reduces the need for restraints," and not a "comparable right to treatment that facilitates release")).

Indeed, Barber's second Complaint again fails to show any procedural or substantive due process violations to date.  Barber does not demonstrate a categorical denial of therapy and treatment sessions due to the prison setting in which he receives his treatment.  Moreover, there is simply no evidence other than Barber's bald allegation that his treatment may be curtailed as punishment for filing grievances or complaining.

In Leamer, the Third Circuit, relying on Sandin, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest.  Leamer, 288 F.3d at 546. Similarly, in the instant case, although Barber and other disruptive and agitative residents may be placed in MAP status in response to their behavior or uncooperation, there is no indication from the allegations here that these residents have been or will be denied treatment.

31

Indeed, there are no factual allegations of an absolute denial of treatment.  Rather, Barber merely recites legal conclusions in his complaint about being made to feel like a "prisoner" rather than a civilly committed person rather than allege any facts to support a claim that he has been denied treatment.  Indeed, he seems mostly fixated on the idea of being in a "prison setting" and does not allege any real disruption or interference with his treatment, other than the allegation that it is being conducted in a "prison setting."

This Court likewise finds no substantive due process violation at this time.  Substantive due process prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty." Glucksberg, 521 U.S. at 721.  Under this standard, Defendants' actions in denying Barber his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment if they were so arbitrary or egregious as to shock the conscience.  See Leamer, 288 F.3d at 546-47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

32

Here, as demonstrated above, defendants have not categorically declined to provide any mental health treatment to Barber.  Thus, this Court cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Barber's substantive due process rights.  Indeed, plaintiff's allegations, as set forth above, are merely conclusory and factually unsubstantiated.  Barber has not shown any disruption of treatment.  Instead, he simply objects to the manner and place in which treatment and sessions are to be provided.

Thus, the Court concludes that treatment has not been denied to Barber, as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged.  Further, this Court concludes that the allegations asserted in Barber's second Complaint does not show such egregious conduct or disruption as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, Barber's claim alleging inadequate treatment will be dismissed for failure to state a cognizable claim of a deprivation of a constitutional right.  The Court reiterates the observation that this is Graham's second attempt to state a claim, and he has failed to muster allegations that would support a denial of or inadequate treatment claim.  Indeed, his claim is merely repetitive and the Court finds no reason or argument by plaintiff that would permit plaintiff yet another bite at the

33

apple.  Accordingly, the Court is constrained to dismiss this claim with prejudice for failure to state a cognizable claim under § 1983.

F.   Retaliation Claim

Barber also asserts that he allegedly was threatened" by the Johnson that he would be placed on MAP status after he complained about mail and packages being sent to the Avenel facility.  He further claims that he will be placed on MAP status if he does not follow the NJDHS "way."

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ." White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

34

This Court finds that the allegations of the Complaint and addendums are insufficient to state a claim of retaliation. Barber has not shown that he was engaging in a constitutionally protected activity that was the substantial or motivating factor in the defendants' decision to take adverse action.  The allegations of the Complaint also fail to show that Barber has suffered adverse action sufficient to deter him from exercising his constitutional rights.  He continues to file grievances, as well as civil complaints in this Court, and he has not yet been placed on MAP status because of this activity.  Rather, it is plain from the Complaint that Barber's allegations are nothing more than a recitation of "labels and conclusions" or the "formulaic recitation of the elements of a cause of action" of retaliation, which is not sufficient to support such a claim of constitutional deprivation.  Iqbal, 129 S.Ct. at 1949.  He has shown no correlation between his grievances and complaints filed and purported adverse action.  Indeed, as noted above, Barber has not yet been placed on MAP status.  Therefore, Barber's claim of retaliation will be dismissed for failure to state a cognizable claim of constitutional magnitude.

G.  Preliminary Injunction

Finally, Barber brings an application for a preliminary injunction to prevent defendants from retaliating against him by confiscating his legal materials or placing him on MAP status for bringing this action.

To secure the extraordinary relief of a preliminary injunction or TRO, plaintiff must demonstrate that "(1) he is likely to succeed on the merits; (2) denial will result in irreparable harm; (3) granting the injunction will not result in irreparable harm to the defendants]; and (4) granting the injunction is in the public interest." Maldonado v. Houston, 157 F.3d 179, 184 (3d Cir. 1998), cert. denied, 526 U.S. 1130 (1999)(as to a preliminary injunction); see also Ballas v. Tedesco, 41 F. Supp.2d 531, 537 (D.N.J. 1999) (as to temporary restraining order).  A plaintiff must establish that all four factors favor preliminary relief.  Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990). The standards for a permanent injunction are essentially the same as for a preliminary injunction, except that the plaintiff must show actual success on the merits, not a likelihood of success, to obtain a permanent injunction.  See University of Texas v. Camenisch, 451 U.S. 390, 392 (1981).

Here, the claims asserted in this Complaint are being dismissed for failure to state a claim at this time. Accordingly, Barber has not alleged facts sufficient to satisfy the first requirement that he may be likely to succeed on the merits.  Moreover, Barber fails to articulate irreparable harm, and thus, cannot satisfy the second mandatory requirement.

Because Barber is unable to establish all four factors necessary for preliminary injunctive relief as required, his application for preliminary injunctive relief must be denied.

36

V.   <u>CONCLUSION</u>

For the reasons set forth above, plaintiff's Complaint will be dismissed with prejudice, in its entirety as against all named defendants, for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  In addition, Plaintiff's request for a preliminary injunction (Docket entry no. 2) will be denied as moot.  An appropriate Order follows.


                                        ***s/Peter G. Sheridan***
                                        PETER G. SHERIDAN
                                        United States District Judge